FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 24, 2018

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KAREN S., | No. 2:17-CV-00302-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 20, 22. Attorney Josephine M. Gerrard represents Karen S. (Plaintiff); Special Assistant United States Attorney Summer Stinson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on April 30, 2014, Tr. 95, 198, alleging disability since July 29, 2009, Tr. 201, due to social adjustment disorder, reading disorder, spinal stenosis, obesity, migraine headaches, mild mental retardation, hearing loss, chronic neck pain, and chronic

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

kidney pain, Tr. 232. The applications were denied initially and upon reconsideration. Tr. 114-16, 118-19. Administrative Law Judge (ALJ) Lori L. Freund held a hearings on November 18, 2015 and April 12, 2016 and heard testimony from Plaintiff, Plaintiff's spouse, medical expert Lynne Jahnke, M.D., psychological expert Nancy Winfrey, Ph.D., and vocational expert Thomas Polsin. Tr. 39-70, 692-732. The ALJ issued an unfavorable decision on June 7, 2016. Tr. 20-32. The Appeals Council denied review on July 11, 2017. Tr. 1-6. The ALJ's June 7, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 26, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 35 years old at the alleged date of onset. Tr. 201. Plaintiff's education status is unclear. Her school records show that she completed the tenth grade. Tr. 271-72. In both a prior application and the current application for benefits, Plaintiff stated that she completed the twelfth grade in 1991. Tr. 222, 233. On February 10, 2011, Plaintiff told a provider that she had her GED and wanted to attend college. Tr. 306, 455. At her first hearing, she testified that she received an Armstrong in Canada, which she identified as a diploma associated with high school. Tr. 702. The Court is unfamiliar with what is required to receive an Armstrong and what would be its equivalence in the United States. At her second hearing, she testified that she did not know whether she received her GED, Tr. 63, and later in the same hearing stated that she had received her GED, Tr. 65. Plaintiff has received training as a certified nursing assistant (CNA) and in traffic flagging. Tr. 64, 233, 702. She testified that her testing for her CNA and her driver's license were performed orally. Tr. 65, 703.

Plaintiff's reported work history includes the jobs of cashier, laborer, maintenance, food clerk, nurse assistance, picker, and banner. Tr. 223, 234, 268. Plaintiff reported that she stopped working on July 29, 2009 due to her conditions. Tr. 232.

Plaintiff's insured status requirements for the Social Security Act expires on December 31, 2012. Tr. 215. Therefore, she must establish disability prior to December 31, 2012 to be eligible for benefits under Title II of the Social Security Act. *See* 20 C.F.R. § 404.315(a)(1).

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 7, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from July 29, 2009, the alleged date of onset, through December 31, 2012, the date last insured. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments: bilateral hearing loss; learning disorders; and low average intellectual functioning. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a full range of work at all exertional levels but with

the following nonexertional limitations:

> She cannot be exposed to unprotected heights. She must avoid concentrated exposure to extreme cold and heat. She would be limited to simple and repetitive tasks of at least level 2. She would work best away from the general public. She could have superficial interactions with her coworkers, but could not perform tandem tasks with those coworkers. She should work in an environment with only moderate noise, meaning office level noise.

Tr. 26. The ALJ identified Plaintiff's past relevant work as housekeeping cleaner and hospital cleaner and concluded that Plaintiff was able to perform this past relevant work. Tr. 31.

As an alternative to finding Plaintiff ineligible at step four, the ALJ made a step five determination that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of kitchen helper, stores warehouse laborer, and laundry worker. Tr. 31. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 29, 2009, through the date Plaintiff was last insured, December 31, 2012. Tr. 32.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to find that Plaintiff met listing 12.05C, (2) finding that she had past relevant work, and (3) failing to meet her burden at step five.

//
//

# DISCUSSION[1]

## 1. Listing 12.05C

Plaintiff argues the ALJ erred in finding that Plaintiff did not meet listing 12.05C. ECF No. 20 at 8-11.

A claimant is found disabled and entitled to benefits if she meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet a listed impairment, a disability claimant must establish that she meets each characteristic of the listed impairment relevant to her claim. *See Tackett*, 180 F.3d at 1099. "The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that [the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2016).[2] Thus, a claimant must meet the standard set

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

[2] The requirements of listing 12.05 was amended on January 17, 2017, but this is a reviewing Court, and it will apply the requirements of the listings that were in effect at the time of the ALJ's decision. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66, 137 (Sept. 26, 2016).

forth in the introductory paragraph and one of the four listed criteria. *Id*. The introductory paragraph requires the following:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D, are satisfied.

*Id*. Paragraph C requires a claimant present evidence of "a valid verbal, performance, or full IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*.

Therefore, in order to meet listing 12.05C based on "intellectual disability," a claimant must present evidence of: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning" which initially manifested before the age of 22 (i.e., "during the developmental period"); (2) a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C (2016); *see Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013).

Here, the ALJ considered listing 12.05C and found that Plaintiff had not met the first prong established by the introductory paragraph: "the claimant has not displayed deficits in adaptive functioning, per the testimony of Dr. Winfrey." Tr. 25. The ALJ's conclusions as to the second and third prongs are less clear. She found that Plaintiff "did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. Yet in the very next sentence, the ALJ found that "[w]hile the claimant does have a full scale IQ of 69, she does

not have deficits in adaptive functioning initially manifested during the developmental period." *Id*.

While the ALJ was less than eloquent in addressing the second and third prongs of listing 12.05C, her determination that Plaintiff failed to meet the first prong is unequivocal. She clearly found that Plaintiff failed to show deficits in adaptive functioning initially manifested during the developmental period, i.e. before age 22, based on the testimony of Dr. Winfrey. Tr. 25. At the hearing Dr. Winfrey stated that Plaintiff failed to meet the preamble of listing 12.05 which requires "deficits in adaptive functioning initially manifested during the developmental period." Tr. 703. The ALJ gave substantial weight to Dr. Winfrey's opinion. Tr. 29.

Plaintiff does not challenge the ALJ's reliance on Dr. Winfrey's testimony. ECF No. 20 at 9. Instead, she argues that Plaintiff's education records show she only had a tenth grade education and refutes the ALJ's finding that Plaintiff obtained a GED. *Id*. However, Dr. Winfrey testified to having considered Plaintiff's education records, Tr. 701, and she considered evidence in the record and Plaintiff's testimony regarding her receipt of an education equivalent to a high school diploma, Tr. 700-02. Here, Plaintiff's arguments represent a different interpretation of the facts and an assertion of legal error. When the evidence is open to more than on interpretation of the evidence, the Court must give deference to the ALJ's interpretation. *Tackett*, 180 F.3d at 1097. As discussed above, Plaintiff has inconsistently reported her education. Therefore, the Court will not disturb the ALJ's determination that Plaintiff failed to meet listing 12.05C.

Plaintiff also challenged the ALJ's step three determination by asserting that the ALJ did not address Plaintiff's speech impairment under listing 2.09 and Plaintiff's neurological impairment. ECF No. 20 at 11-12. In support of these assertions, the ALJ cites to statements by providers and witnesses in the record that Plaintiff presented with an unusual speech pattern and a reference to a need to

monitor Plaintiff for etiology of neurological symptoms. ECF No. 20 at 11-12 (citing Tr. 277, 632, 635, 662[3]).

However, references to possible impairments alone are insufficient to establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1521 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. . . We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment."). Here, Plaintiff fails to point to a diagnosis of a communication or neurological impairment. Therefore, there is not substantial evidence of a medically determinable communication or neurological impairment, and the Court will not disturb the ALJ's step three determination.

**2. Past Relevant Work**

Plaintiff argues that her previous jobs consisted of sheltered work meaning she had no past relevant work for consideration at step four. ECF No. 20 at 13-14.

Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. 404.1560. Work performed under special conditions, including the receipt of special assistance from other employees, can be used to show that the work was not performed at substantial gainful activity levels. 20 C.F.R. § 404.1573(c).

The vocational expert testified that Plaintiff's past relevant work included the jobs of cashier, housekeeping cleaner, hospital cleaner, home attendant, lumber sorter, agricultural produce sorter, and general clerk. Tr. 58-59. Plaintiff was given the opportunity at the hearing to object to these jobs as her past relevant

---

[3]Plaintiff cites to a blank page on a form the Agency sent to Dr. Jahnke. ECF No. 20 at 12 (citing Tr. 662).

work and she presented no objections. Tr. 59-60. Nor did she raise any assertions of sheltered work. *Id*. Furthermore, Plaintiff presented no argument in her briefing before either the ALJ or the Appeals Council that her past jobs were done in a sheltered work environment. Tr. 296-302; *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (when a claimant is represented by counsel, she "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."). Even her current argument lacks specifics as to how her past jobs qualify as sheltered work. ECF No. 20 at 13-16. Therefore, this Court will not disturb the ALJ's step four determination.

Furthermore, even if Plaintiff had presented evidence of a sheltered work environment and was successful in showing that the ALJ erred by considering past jobs that did not qualify as past relevant work, any error would have been harmless because the ALJ continued forward in the five step sequential evaluation and made an alternative step five determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

**3. Step Five**

Plaintiff argues that the ALJ failed to meet her burden of proof at step five because her illiteracy precludes the jobs identified by the ALJ according to the Dictionary of Occupational Titles (DOT). ECF No. 20 at 14-15. Plaintiff's argument is premised on the General Education Development addressed in Appendix C of the Dictionary of Occupational Titles Identifiers addressing language, asserting that a 01 level of Language Development requires a worker to recognize the meaning of 2,500 words and read at a rate of 95-120 words per minute and all the jobs identified by the ALJ require a level 01 Language Development. *Id*.

The Ninth Circuit has recognized that the best source for determining how a job is generally performed is usually the DOT. *Pinto v. Massanari*, 249 F.3d 840,

845-46 (9th Cir. 2001) *citing Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "In order for an ALJ to accept vocational expert testimony that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" *Pinto*, 249 F.3d at 846 *quoting Johnson*, 60 F.3d at 1435. An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). "The ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id*. at 1153.

At the hearing, the vocational expert testified that an individual with a twelfth grade education, Plaintiff's past relevant work, and a residual functional capacity consistent with the ALJ's determination, Tr. 60, could perform the jobs of kitchen helper, warehouse laborer, and laundry worker, Tr. 62. When the same hypothetical was presented to the vocational expert, but "deem that individual illiterate in the inability to function adequately with writing or reading English language," the vocational expert testified that in his opinion the additional limitation would not preclude that individual's ability to perform these jobs stating that "the fact of the matter is there is a substantive number of Americans that work that can't read or write." Tr. 68. He did note that there may be a reduction in the number of jobs of laundry worker due to the inability to read or write. Tr. 58-59. The ALJ adopted the vocational expert's conclusion that literacy did not change the jobs available to Plaintiff. Tr. 31.

The Court is not persuaded that illiterate equals disabled. The vocational expert testified that "a substantive number of Americans that work that can't read or write." Tr. 68. The vocational expert's testimony regarding his opinion and the prolific nature of illiteracy among the nation's employed workers was sufficient to

overcome any inconsistencies with the DOT. As such, the ALJ's step five determination is free of error.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 24, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE